# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES B. FAUST,<br><br>   Plaintiff,<br><br>v.<br><br>ANDREA J. CABRAL,<br>SUPERINTENDENT GERARD HOGAN,<br>SEARGENT MELBERG, NAPHCARE<br>MENTAL HEALTH SERVICES and<br>KHOA DO,<br><br>   Defendants. | Civil Action No. 12-11020-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                              **July 30, 2013**

## I.     Introduction

Plaintiff James M. Faust ("Faust"), an inmate in the custody of the Suffolk County House of Correction (the "HOC"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 for violations of his First and Eighth Amendment rights.  He also asserts a claim for negligence. Faust names five defendants:  (1) Andrea J. Cabral ("Cabral"), formerly the Sheriff of the HOC; (2) Gerard Horgan ("Horgan"), the Superintendent of the HOC; (3) Sgt. Melberg ("Melberg"), an officer at the HOC (collectively, the "Prison Official Defendants"); (4) Naphcare Mental Health Services ("Naphcare"), a part of the medical services department at the HOC (Naphcare, together with the Prison Official Defendants, the "Defendants"); and (5) Khoa Do (inmate #1201111) ("Do"), an inmate at the HOC.  The Defendants have moved to dismiss certain claims under Fed.

1

R. Civ. P. 12(b)(6).  Faust has moved for a temporary restraining order, which the Court treats as a motion for a preliminary injunction.  For the reasons set forth below, the Court DENIES Naphcare's motion to dismiss and DENIES in part and GRANTS in part the Prison Official Defendants' motion to dismiss.  The Court DENIES Faust's motion for injunctive relief.

## II.     Burden of Proof and Standard of Review

The Court will dismiss a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555; see also San Gerónimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).  At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. Moreover, the Court is mindful that Faust has filed his complaint pro se.  A pro se complaint must "be liberally construed [and] however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).

### III.   Factual Background

The following summary is based upon the factual allegations in the complaint, which the Court must, for the purposes of the Defendants' motions to dismiss, accept as true.

Faust is an inmate at the HOC.  Compl. at 1.  On March 23, 2012, Faust filed a grievance accusing Melberg of unlawfully interfering with Faust's access to the law library.  Id. at 2; Ex. A, Compl., D. 1-1.  Faust alleges that on April 9, 2012, Melberg retaliated against him for filing the foregoing grievance against him by "[o]rchestrat[ing] an assault" upon Faust.  Compl. at 2. Specifically, Melberg moved Faust's then-cellmate to another cell and moved Do, an inmate with mental health issues, into Faust's cell.  Id. at 3.  According to Faust, Melberg knew that Do had a history of assaultive behavior.  Id.  On April 11, 2012, Do assaulted Faust "for no apparent reason" causing Faust to sustain "serious physical and emotional injuries."  Id. at 3, ¶ 2.  Faust alleges that Naphcare has a policy of "restricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive."  Id. ¶ 4.  Accordingly, Naphcare failed to provide Faust necessary medical care causing him to suffer further physical and emotional pain and injury.  Id. ¶ 6.

As a result of the assault, Faust was given a disciplinary report and moved to isolation. Id. at 3; Ex. B, Compl., D. 1-2.  The disciplinary report was later dismissed.  Compl. at 3.  On April 16, 2012, Faust filed a grievance asserting that Melberg deliberately moved Do into his cell and orchestrated the assault in retaliation for Faust's grievance against Melberg.  Id.; Ex. C, Compl., D. 1-3.  This grievance was denied and Faust appealed.  Compl. at 3.

IV.     **Procedural History**

On June 8, 2012, Faust filed a complaint alleging violations of his rights under the First and Eighth Amendments of the United States Constitution.  D. 1.  Faust also alleges that the Defendants were negligent.  D. 1.  Faust requests, among other things, that the Court declare that the Defendants violated his First and/or Eighth Amendment rights, issue an injunction requiring Naphcare to provide physical therapy to Faust and award compensatory and punitive damages. D. 1 at 6–7.  Pending before the Court are:  Naphcare's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), D. 22; the Prison Official Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), D. 25; Naphcare's motion to strike certain exhibits attached to Faust's opposition to Naphcare's motion to dismiss, D. 30; and Faust's motion for a temporary restraining order, D. 43.  After a hearing on these motions, the Court took the matters under advisement.

V.      **The Defendants' Motions to Dismiss**

A.      <u>**Exhaustion of Administrative Remedies**</u>

1.      *Claims against Cabral and Horgan*

The Prison Official Defendants argue that the claims against Cabral and Horgan must be dismissed for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[1]  The PLRA provides that "[n]o action shall be brought with respect to

---

[1] Massachusetts has enacted an analogous exhaustion requirement.  Mass. Gen. L. c. 127, § 38F (providing that "[a]n inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E . . . ."); <u>Ryan v. Pepe</u>, 65 Mass. App. Ct. 833, 835 (2006).  "The same exhaustion analysis generally applies under both the PLRA and Section 38F." <u>Thompson v. Worcester Cnty.</u>, No. 10-40126-FDS, 2011 WL 4829972, at *2 n.4 (D. Mass. Oct. 11, 2011); <u>see also</u> <u>Carter v. Symmes</u>, No. 06-10273-PBS, 2008 WL 341640, at *3 (D. Mass. Feb. 4, 2008) (noting that "[c]ourts generally apply a single analysis under both the PLRA and Section 38F").

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  Thus, a prisoner must exhaust all available administrative remedies before bringing suit.  Woodford v. Ngo, 548 U.S. 81, 85 (2006) (noting that exhaustion is "mandatory").  However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007).  Rather, failure to exhaust under the PLRA is an affirmative defense, id., and "must be raised and proved by the defense," Cruz-Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010).  "An inmate's complaint is subject to dismissal for failure to exhaust if the allegations in the complaint, taken as true, suffice to establish the failure to exhaust."  Facey v. Dickhaut, 892 F. Supp. 2d 347, 354 (D. Mass. 2012).

The PLRA exhaustion requirement demands compliance with the prison's administrative grievance procedures.  Jones, 549 U.S. at 218 (explaining that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").  Pursuant to Mass. Gen. L. c. 124, § 1(i) & (q) and c. 127, § 38E, the Massachusetts Commissioner of Correction issues regulations outlining inmate grievance procedures, which are codified at 103 Mass. Code Regs. § 491.00 et seq.  The Massachusetts Department of Correction's ("DOC") grievance policy requires grievances to include "the date of occurrence of the incident" and "a brief statement of facts."  103 Mass. Code Regs. § 491.09(2)(a), (d).  In the complaint, Faust alleges that Cabral and Horgan failed to train Melberg properly, the officer who placed Do in his cell, and failed to take steps to ensure that "policies" were being followed to protect Faust from injuries at the hands of inmates who suffer from mental health issues and, more specifically, refused to protect

---

Accordingly, "[b]oth Federal and State law . . . expressly require inmates to exhaust available grievance procedures before going to court."  Ryan, 65 Mass. App. Ct. at 839.

him from Do.  Compl. ¶¶ 5, 7.  Faust also alleges that on April 16, 2012 he filed Grievance #G12031 to complain about Do's attack, which he claims was orchestrated by Melberg.  Id. at 3.  In the grievance, which is attached to the complaint, Faust asserts that on "April 11, 2012 at approximately 9:10 am" he was assaulted by inmate #1201111, that Melberg deliberately moved inmate #1201111, who had mental health issues and assaultive behaviors, into Faust's cell, and that this was done in retaliation "base[d] up[on] [Faust's] investigation against him by SID."  Ex. A-1, Compl., D. 1-1 at 5.[2]  Faust requested a "full investigation by SID" of Melberg's placement of the inmate into his cell.  Id.

The Prison Official Defendants argue that Faust failed to grieve the claims against Cabral and Horgan because the grievances incorporated in Faust's complaint do not include any alleged misconduct by either Carbal or Hogan and that "in fact," Faust's grievances are "completely void of any misconduct by Defendant Cabral or Defendant Horgan."  D. 26 at 12–13.  However, the "primary purpose of a grievance system is to alert prison officials of problems, not to act as notice that particular prison officials may be sued."  Mallory v. Marshall, 659 F. Supp. 2d 231, 238 (D. Mass. 2009) (Report and Recommendation), adopted by 659 F. Supp. 2d 231 (D. Mass. 2009).  Therefore, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  Jones, 549 U.S. at 219.  The DOC's grievance regulations do not require the inmate to name defendants or state legal claims.  103 Mass. Code Regs. § 491.09(2)(a)–(f); Mallory, 659 F. Supp. 2d at 238.  Rather, the Court must determine whether Faust's claims in the complaint are "like or reasonably related" to the allegations in the grievance.  See Carter, 2008 WL 341640, at *4 (explaining that "the PLRA incorporates 'the

---

[2] The Court may consider the grievance itself because "[e]xhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)."  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

doctrine of exhaustion in administrative law,'" and therefore "the Court must determine whether [the inmate's] claim fits within the 'like or reasonably related' exception to the exhaustion requirement" (quoting <u>Woodford</u>, 548 U.S. at 93)).  "The touchstone of this 'like or reasonably related' inquiry is whether the initial grievance gave the agency sufficient notice to investigate and consider all grounds for [his] civil rights complaint."  <u>Id.</u>; <u>see also</u> <u>Mallory</u>, 659 F. Supp. 2d at 238.  "Courts have liberally applied the like or reasonably related exception."  <u>Carter</u>, 2008 WL 341640, at *4; <u>see also</u> <u>Garcia v. Mule Creek State Prison</u>, No. 03-1947MCEPANP, 2005 WL 1366515, at *2 (E.D. Cal. May 31, 2005) (holding that a prisoner's grievance against two defendants alleging a discrete instance of deficient medical care was sufficient to cover all claims arising from his ongoing course of treatment).

The Court finds that Faust's grievance allegations are "like or reasonably related" to the claims against Cabral and Horgan.  The prison was on notice of the assault and Melberg's actions, which Faust asserted caused the assault.  An investigation into the placement of Do into the cell would certainly involve inquiries into Melberg's authority to switch Faust's cellmate, policies relating to inmate cell placement and whether other prison officials, such as Cabral and Horgan, were complicit in this placement.  <u>See</u> <u>Mallory</u>, 659 F. Supp. 2d at 235–38 (finding grievance that listed the injuries the inmate suffered from an attack by another inmate and requested damages in compensation for these injuries, but did not specifically identify any of the prison official defendants, allege any wrongdoing by any of the defendants or explain the legal basis for the claims sufficient to cover claims against the defendants for, among other things, violations of the Eighth Amendment for failing to prevent the attack).  This is supported by the reasons given for the denial of the grievance, which included that Melberg "had no knowledge

of . . . Do's mental status or intent" and "[t]he cell change was routine."  Ex. A-1, Compl., D. 1-1 at 5.  Accordingly, the Court finds that the allegations in the complaint do not establish a failure to exhaust administrative remedies and DENIES the Prison Official Defendants' motion to dismiss the claims against Cabral and Horgan on this basis.

2.    <em>Claims against Naphcare</em>

Naphcare also moves to dismiss the claims against it on the basis of failure to exhaust.  See D. 22.  Faust alleges that Naphcare refused to "authorize the removal of [Do]," was negligent in screening "serious[ly] impaired mental health inmates" and failed to provide Faust with needed medical treatment after the assault.  Compl. ¶¶ 3, 6, 11.  Faust references filing two grievances in the complaint and attaches the grievance forms as exhibits:  (1) a March 23, 2012 grievance complaining of Melberg's interference with Faust's access to the law library, (2) a April 16, 2012 grievance complaining of the assault by Do that was orchestrated in retaliation for the March grievance.  Id. at 2, 3; Exs. A & A-1, Compl., D. 1-1.  Naphcare argues that the claims against it are not "like or reasonably related" to the allegations in these grievances so as to give prison administrators adequate notice to investigate the medical claims.  D. 23 at 6.  Naphcare also contends that dismissal is warranted here because the complaint fails to indicate whether or not Faust has exhausted his administrative remedies.  D. 31 at 3.

As discussed above, there is no burden on Faust to plead exhaustion, which "must be raised and proved by the defense."  Cruz-Berríos, 630 F.3d at 11.  The complaint neither references Faust filing grievances against Naphcare, nor does it contend that the grievances referred to in the complaint are the only grievances Faust filed.  Therefore, nothing on the face of the complaint establishes a failure to exhaust administrative remedies against Naphcare.  See

Dantone v. Bhaddi, 570 F. Supp. 2d 167, 173 (D. Mass. 2008) (Report and Recommendation) (denying motion to dismiss for failure to exhaust where "the matter cannot be determined from a review of the four corners of the complaint"), adopted by 570 F. Supp. 2d 167 (D. Mass. 2008). Although Naphcare has now raised the issue of exhaustion in its motion to dismiss, Faust opposes the motion and asserts that he exhausted his administrative remedies and filed grievances specifically addressing his claims against Naphcare.  D. 27 at 3, 5–6.  Faust attaches to his opposition the purported records of his grievance and appeal, which appear to indicate that Faust filed a grievance on May 14, 2012, which included allegations that Naphcare's "failure to ensure that certain policies were put into place and followed to protect inmates from other inmates who have serious mental health issues violated [his] Eighth Amendment Rights" and that he has been denied medical care, and that he filed an appeal on May 31, 2012.[3]  Ex. A, D. 27-2 at 2; Ex. A-1, D. 27-3 at 2.  In response, Naphcare has filed a motion to strike these exhibits on the grounds that the grievance and grievance appeal were never submitted to the Inmate Grievance Coordinator and the prison officials' signatures on them are forgeries.  D. 31 at 2–3. Thus, there is a factual dispute as to the authenticity of the grievances, which is not resolvable on the basis of the record that is currently before the Court.  Additional fact-finding is necessary as to whether the PLRA requirement bars Faust's suit or not and thus this issue is one to be addressed in a motion for summary judgment.  See Dantone, 570 F. Supp. 2d at 173 (noting that "[e]xhaustion under the PLRA is an affirmative defense" and "if factual evidence beyond the complaint must be considered to decide the issue raised by the affirmative defense, such information may only be considered in the context of a motion for summary judgment").  For the

---

[3] The Court notes that the copy quality of the copy of the May 14, 2012 grievance in the record is poor and other parts of that grievance are largely illegible.

foregoing reasons, the Court DENIES Naphcare's motion to dismiss and DENIES Naphcare's motion to strike.

###    B.      <u>Official Capacity Claims</u>

Faust brings this action against the Prison Official Defendants in both their individual and official capacities and is seeking monetary damages from them.  Compl. at 7, ¶¶ 1–3.  The "performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the [state]."  <u>Guillemard-Ginorio v. Contreras-Gómez</u>, 585 F.3d 508, 531 (1st Cir. 2009) (alteration in original) (quoting <u>New Orleans Towing Ass'n v. Foster</u>, 248 F.3d 1143 (5th Cir. 2001)).  Faust brings his federal constitutional claims for violations of the First and Eighth Amendments against the Prison Official Defendants pursuant to 42 U.S.C. § 1983.  Compl. ¶¶ 1–3.  However, "it is well settled 'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.'"  <u>Wang v. N.H. Bd. of Registration in Med.</u>, 55 F.3d 698, 700 (1st Cir. 1995) (quoting <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991)).  Faust also appears to bring state law claims for negligence against these defendants.  <u>See</u> Compl. ¶¶ 9–10.  However, in an official-capacity suit, "the Supreme Court has held that the Eleventh Amendment bars state law claims against state officials for . . . monetary relief."  <u>Guillemard-Ginorio</u>, 585 F.3d at 531 (quoting <u>Foster</u>, 248 F.3d at 1143).  The Eleventh Amendment is inapplicable to personal-capacity suits "regardless of whether the claims alleged against the individual officer are grounded in state or federal law."  <u>Id.</u>  Accordingly, the Court GRANTS the Prison Official Defendants' motion to dismiss the claims against them in their official capacities.

**C.      Federal Civil Rights Claims against Cabral and Horgan Acting in their Individual Capacities**

Although the claims against Cabral and Horgan acting in their official capacities are barred by sovereign immunity, there is still the potential for section 1983 liability for the officers acting in their individual capacities.   42 U.S.C. § 1983 creates a cause of action against individuals acting under color of state law who violate rights of another secured under the Constitution of the United States.   Faust alleges that Cabral and Horgan violated his Eighth and First Amendment rights.

### *1.      Eighth Amendment Claims*

The Prison Official Defendants have moved to dismiss Faust's claim that Cabral and Horgan violated his Eighth Amendment rights by failing to protect him from an assault by a fellow inmate.   The Eighth Amendment's prohibition of "cruel and unusual punishment" applies to "the treatment a prisoner receives in prison and the conditions under which he is confined." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)) (internal quotation mark omitted).   Thus, prison officials must ensure that the conditions do "not involve the wanton and unnecessary infliction of pain."   Rhodes v. Chapman, 452 U.S. 337, 347 (1981).   They have a duty to "provide humane conditions of confinement" and "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates."   Giroux v. Somerset Cnty., 178 F.3d 28, 31 (1st Cir. 1999) (quoting Farmer, 511 U.S. at 832) (internal quotation marks omitted). "Therefore, under the Eighth Amendment, 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"   Id. at 32 (omission in original) (quoting Farmer, 511 U.S. at 833).

"However, not every injury suffered by a prisoner at the hands of a fellow inmate gives rise to an Eighth Amendment claim."  Id.  In order for Faust to state a claim for a violation of the Eight Amendment, two conditions must be met.  First, the deprivation alleged must be "objectively serious."  Id.  In this case, Faust must "show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  Second, the officials involved must have had "sufficiently culpable states[s] of mind," Wilson v. Seiter, 501 U.S. 294, 297 (1991), described as "deliberate indifference" to inmate health or safety, Farmer, 511 U.S. at 834.  "In this context, 'deliberate indifference' means that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Giroux, 178 F.3d at 32 (quoting Farmer, 511 U.S. at 837).  The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  However, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."  Id. at 843.

The Prison Official Defendants argue that the Eighth Amendment claims against Cabral and Horgan should be dismissed because Faust has failed to allege any facts establishing that either defendant had a sufficiently culpable state of mind.  D. 26 at 8.  Faust has alleged only that Cabral and Horgan failed to protect him from an assault, failed to take steps to ensure that policies were followed to protect Faust from injuries at the hands of inmates who suffer from mental health issues and that this failure constituted "deliberate indifference."  Compl. ¶¶ 5, 9.

12

This conclusory allegation of "deliberate indifference" without further factual support is insufficient to state an Eighth Amendment claim.  See Twombly, 550 U.S. at 555 (noting that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (alteration in original)).  Unlike the allegations regarding Melberg, the complaint is devoid of allegations regarding Cabral and Horgan's knowledge of a substantial risk of harm.  Faust alleges that Melberg knew that Do had a history of assaultive behavior and failed to act on his "knowledge of a substantial risk of harm" to Faust.  Id. at 3, ¶ 1.  In contrast, Faust has neither alleged that Cabral and Horgan knew about Do's placement in Faust's cell and Do's mental condition, nor alleged that they were aware of a substantial risk to Faust or other inmates' safety in the form of attacks from mentally ill inmates.  See Dillon v. Dickhaut, No. 12-10713-GAO, 2013 WL 2304175, at *6 (D. Mass. May 24, 2013) (Report and Recommendation) (dismissing Eighth Amendment claims against defendants stemming from the plaintiff's assault by a fellow inmate where the only allegations were that the defendants implemented a policy of double-bunking and "encouraged" and "created" a culture within the prison that allowed the plaintiff to be assaulted), adopted by 2013 WL 2304175 (D. Mass. May 24, 2013).  Accordingly, Faust has failed to allege that Cabral and Horgan knew of and disregarded a risk to his health and safety.

Although Faust also alleges that Cabral and Horgan failed to properly train Melberg who knew that Do had a "history of assaultive behaviors" and deliberately moved him into Faust's cell, Compl. at 2–3, ¶ 10, he may not hold Cabral and Horgan vicariously liable for Melberg's actions simply because he was their subordinate.  See Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (noting that "supervisors are not automatically liable for the misconduct

of those under their command" (quoting <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000)) (internal quotation mark omitted)).  Faust must allege an "affirmative link" between Melberg's behavior and Cabral and Horgan's actions or inactions.  <u>Id.</u>  Thus, to hold Cabral and Horgan liable for Melberg's behavior, Faust must allege that (1) Melberg's behavior resulted in a constitutional violation, and (2) Cabral and Horgan's actions or inactions were "affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference."  <u>Pineda v. Toomey</u>, 533 F.3d 50, 54 (1st Cir. 2008) (alterations in original) (quoting <u>Lipsett v. Univ. of P.R.</u>, 864 F.2d 881, 902 (1st Cir. 1988)) (internal quotation mark omitted).  Even if Faust sufficiently stated an Eighth Amendment claim against Melberg, he has failed to allege any behavior by Cabral and Horgan that could be characterized as encouragement, condonation or gross negligence amounting to deliberate indifference.

Because the Court cannot say at this juncture that it would be futile for Faust to amend his complaint to add factual allegations to support his legal conclusion that Cabral and Horgan acted with "deliberate indifference," the Court DENIES without prejudice the Prison Official Defendants' motion to dismiss and GRANTS Faust leave to amend as to the Eighth Amendment claims against Cabral and Horgan.

2.    *First Amendment Claims*

The Prison Official Defendants have also moved to dismiss Faust's First Amendment claims against Cabral and Horgan stemming from alleged retaliation for filing a grievance. Prisoners "have a First Amendment right to petition the prison for the redress of grievances and prison officials may not retaliate against prisoners for exercising that right."  <u>Schofield v. Clarke</u>,

14

769 F. Supp. 2d 42, 46 (D. Mass. 2011). To state a First Amendment retaliation claim against prison officials, a prisoner must allege that: (1) he engaged in constitutionally protected conduct, (2) the prison officials took an adverse action against him, and (3) there was a causal connection between the protected conduct and the adverse action. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).

Assuming, without deciding, that Faust has adequately plead the first two elements of a retaliation claim, the Court turns to the third prong. Faust has simply alleged that the "refusal of [Cabral and Horgan] to provide protection from inmate [Do] as a result of [Faust] having filed grievances against [Melberg] constituted retaliation." Compl. ¶ 7. This legal conclusion without further factual support is insufficient to state a retaliation claim. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 10 (1st Cir. 2011) (explaining that a "a court resolving a Rule 12(b)(6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions" and "[u]nlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth"); Ball v. Strafford Cnty. Dep't of Corr., No. 11-CV-404-PB, 2012 WL 1118207, at *7 (D.N.H. Mar. 7, 2012) (Report and Recommendation) (finding a pro se plaintiff's "conclusory assertion" insufficient to state a claim that he was retaliated against in violation of his First Amendment rights), adopted by 2012 WL 1119386 (D.N.H. Apr. 1, 2012).

Although "[i]n certain cases, a suggestive temporal proximity, departure from standard operating procedures, and the chronology of events may provide a basis for allowing a First Amendment retaliation claim to proceed," this is not the case here. Cole v. Thyng, No. 11-CV-018-JL, 2011 WL 6020804, at *17 (D.N.H. Nov. 8, 2011) (Report and Recommendation),

adopted by 2011 WL 6018272 (D.N.H. Dec. 2, 2011); see also Schofield, 769 F. Supp. 2d at 47

(noting that "[b]ecause direct evidence of the officials' intent is often unavailable, the Court

examines whether a retaliatory intent may be inferred from the chronology of events which may

support an inference of retaliation under some circumstances").  In this case Faust alleges that

Cabral and Horgan failed to protect him because they failed to take steps to ensure that policies

were being followed to protect Faust from injuries at the hands of mentally ill inmates and failed

to properly train Melberg.  Compl. ¶¶ 5, 10.  However, these failures seem to have occurred

before Melberg placed Do in Faust's cell and thus belie his assertion that the failure to protect

was done in retaliation for filing a grievance.  In addition, there are no allegations that Cabral

and Horgan knew Faust's cellmate was mentally ill.  This claim as against Cabral is further

undermined by the fact that the complaint is devoid of allegations that Cabral knew about Faust's

grievance.[4]  See Cole, 2011 WL 6020804, at *17 (dismissing a pro se plaintiff's retaliation claim

in part because the complaint provided no factual allegations showing that the defendant knew

that the plaintiff had initiated a grievance prior to the alleged retaliatory conduct).  Because the

Court cannot say at this juncture that it would be futile for Faust to amend his complaint to add

factual allegations to support his legal conclusion that Cabral and Horgan retaliated against him,

the Court DENIES without prejudice the Prison Official Defendants' motion to dismiss and

GRANTS Faust leave to amend as to these claims.[5]

---

[4] Faust's grievance appeal form bears Horgan's signature, thus giving rise to the inference that he was aware of Faust's grievance.  Ex. A-1, Compl, D. 1-1 at 6.

[5] The Prison Official Defendants also argue that the constitutional claims against Cabral and Horgan should be dismissed on the grounds of qualified immunity because Faust "fails to assert any facts demonstrating a federal statutory or constitutional right violation by either Defendant Cabral or Horgan."  D. 26 at 10–11.  Thus, the basis for the Prison Official Defendants' qualified immunity argument is that Faust has failed to state a claim on the merits.  Because the Court is granting Faust leave to amend as to the merits of his First and Eighth Amendment claims against

### D.    <u>Common Law Negligence Claims</u>

Although Faust's complaint is styled as being brought under section 1983, Faust also appears to be asserting state common law negligence claims against the Prison Official Defendants.  However, the Massachusetts Tort Claims Act ("MTCA") provides the exclusive remedy for "personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . ."  Mass. Gen. L. c. 258, § 2.  Under the MTCA, "no . . . public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."  <u>Id.</u>; <u>Maraj v. Massachusetts</u>, 836 F. Supp. 2d 17, 31 (D. Mass. 2011) (noting that "the MTCA categorically protects public employees acting within the scope of their employment from liability for 'personal injury or death' caused by their individual negligence").

Here, Faust alleges that the Prison Official Defendants are public employees.  Compl. ¶¶ 1–3.  Moreover, the complaint appears to concede that these individuals were working within the scope of their employment.  Specifically, Faust alleges that as a result of the Prison Official Defendants' "[n]egligence in there [sic] breach of duty the Plaintiff . . . suffer[ed] serious injuries to his hand and neck [and] [p]hysical and emotional injuries base[d] on there [sic] failure to protect him . . . from a[n] assault by inmate [Do]."  Compl ¶ 9.  As to Cabral and Horgan, Faust further alleges that they negligently failed to properly train Melberg.  <u>Id.</u> ¶ 10.  Because Faust alleges that the Prison Official Defendants were public employees acting within the scope of their employment, the Court must DISMISS the negligence claims against them.  <u>See</u> <u>Maraj</u>, 836

Cabral and Horgan, the Court will not dismiss the claims against them at this time on the grounds of qualified immunity.

F. Supp. 2d at 31 (dismissing negligence claims brought against a Massachusetts sheriff and individual corrections officers pursuant to the MTCA).

## VI.    Faust's Motion for Injunctive Relief

Faust filed a motion for a Temporary Restraining Order against the Defendants, which the Court treats as a motion for a preliminary injunction.  D. 43.  Faust seeks a court order mandating that the Prison Official Defendants cease retaliating against him for filing the April 2012 grievance and the instant action by (1) falsifying disciplinary reports, (2) opening his incoming and outgoing legal correspondence, and (3) abusing and harassing Faust.  D. 43 at 1. Faust also seeks an order that Naphcare stop denying him medical care.  D. 43 at 2.

### A.    <u>Burden of Proof and Standard of Review</u>

To obtain the extraordinary remedy of a preliminary injunction, a movant must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  <u>Voice of The Arab World v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011); <u>Esso Standard Oil Co. (P.R.) v. Monroig-Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006) (noting that the "party seeking the preliminary injunction bears the burden of establishing that these four factors weighs in its favor").  "The sine qua non of this four-part inquiry is likelihood of success on the merits:  if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."  <u>New Comm Wireless Servs., Inc. v. SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002).

"To show that a preliminary injunction is warranted, the [movant] must make a greater showing than that required when attempting to defeat a motion to dismiss."  <u>Cryer v. Spencer</u>,

No. 11-10654-DJC, 2012 WL 892883, at *9 (D. Mass. Mar. 15, 2012).  Thus, on a motion for a preliminary injunction, in determining whether the movant has demonstrated the four factors, the Court need not accept the allegations in the complaint as true and the plaintiff "must offer proof beyond unverified allegations in the pleadings."  Strahan v. Roughead, No. 08-CV-10919-MLW, 2010 WL 4827880, at *10 (D. Mass. Nov. 22, 2010) (quoting Palmer v. Braun, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001)) (internal quotation mark omitted); see also 11A Charles Alan Wright et al., Federal Practice & Procedure § 2949 (2d ed. 1995) (noting that "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction").

Although the Court has concluded that some of Faust's claims survive the Defendants' motions to dismiss, it does not necessarily follow that Faust has demonstrated a likelihood of success on the merits to warrant the entry of a preliminary injunction.  Ultimately, "trial courts have wide discretion in making judgments regarding the appropriateness of such relief." Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 14 (1st Cir. 2009).  "In general, injunctive relief is 'to be used sparingly, and only in a clear and plain case.'"  Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F. Supp. 2d 110, 117 (D. Mass. 2010) (quoting Rizzo v. Goode, 423 U.S. 362, 378 (1976)).

### B.    Unrelated Claims

The Prison Official Defendants oppose the motion for a preliminary injunction on the basis that Faust's motion is premised on conduct by non-parties and new assertions of mistreatment that are unrelated to the allegations in the underlying lawsuit.  D. 53 at 2–5.  The "purpose of a preliminary injunction is to preserve the status quo before the merits have been

resolved." Sanchez, 572 F.3d at 19 (emphasis in original); see also Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) (explaining that "[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint"). "Thus, a moving party must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." DeWitt v. Wall, No. 01-065 T, 2001 WL 1018332, at *1 (D.R.I. June 5, 2001); accord Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994).

In the underlying complaint in this case, Faust alleges that Melberg orchestrated an assault by a mentally ill inmate in retaliation for Faust filing a grievance on March 23, 2012 and that Cabral and Horgan failed to protect him from this inmate. See Compl. at 2–3. In contrast, in the motion for a preliminary injunction, Faust makes several new allegations of retaliation, including allegations against non-parties, which occurred after the assault and the filing of the underlying lawsuit. Specifically, Faust alleges that (1) since the April 2012 grievance complaining about the assault was denied, the Sheriff's Department has been interfering with his legal mail, D. 43 at 6, 7; (2) he has been placed in isolation for "seeking his rights to [the] courts," D. 43 at 6; (3) on June 15, 2012, he was assaulted by an "officer name[d] R. Giallo" (non-party) during a pat search, Faust Aff., D. 43 ¶ 7; (4) Melberg harassed a witness who agreed to "testify in an affidavit of the harassments," D. 43 at 6; (5) on August 17, 2012, Sergeant Carbonneau (non-party) assaulted him, D. 43 at 6; and (6) on March 25, 2013, Melberg searched his cell and Faust received two false disciplinary reports, Faust Aff., D. 43 ¶¶ 8, 10. These claims are unrelated to the allegations contained in the complaint, and thus cannot serve as the

basis for Faust's motion for a preliminary injunction. <u>See</u> <u>Devose</u>, 42 F.3d at 471 (noting that "[a]lthough these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit"); <u>Polansky v. Wrenn</u>, No. 12-CV-105-PB, 2013 WL 1165158, at *5 (D.N.H. Feb. 22, 2013) (Report and Recommendation) (denying request for preliminary injunction because it stemmed entirely from new claims that were raised for the first time in the motions to amend the complaint and for preliminary injunction), <u>adopted sub nom. by</u> <u>Polansky v. N.H. Dep't of Corr.</u>, 2013 WL 1155429 (D.N.H. Mar. 19, 2013); <u>Pourkay v. City of Phila.</u>, No. 06–5539, 2009 WL 1795814, *11 n.1 (E.D. Pa. June 23, 2009) (denying preliminary injunction based on First Amendment claims of retaliation for filing underlying lawsuit because although plaintiff alleged First Amendment retaliation in his complaint, that claim was premised upon facts entirely separate from those alleged in the instant motion for a preliminary injunction); <u>Parker v. Dep't of Corr.</u>, No. 93-10574-MLW, 1996 WL 74215, at *6 (D. Mass. Dec. 11, 1995) (Report and Recommendation) (denying motion for preliminary injunction because the allegations in the motion had "nothing to do at all" with the underlying complaint and were against prison officials who were not defendants in the case), <u>adopted by</u> 1996 WL 74215 (D. Mass. Feb. 5, 1996).

## C.    <u>Likelihood of Success on the Merits</u>

To the extent Faust's motion for a preliminary injunction rests on allegations related to the complaint, the Court, after considering the facts alleged in the complaint, the memorandum in support of the motion for a preliminary injunction, the affidavit filed in support of the motion (and exhibits attached thereto), the filings by the Defendants in opposition to the motion for injunctive relief, and the arguments by both parties at the motion hearings, finds that Faust has

not shown a likelihood of success on the merits of his claims against the Defendants.  The Court notes at the outset that it has dismissed the official capacity and negligence claims against the Prison Official Defendants.

### 1.    First and Eighth Amendment Claims Against Cabral and Horgan

As to Faust's surviving First and Eighth Amendment claims against Cabral and Horgan, the Court denied without prejudice the motion to dismiss these claims, but noted that the allegations as currently presented in the complaint fail to state a claim.  Accordingly, Faust has not made a showing sufficient to demonstrate a likelihood of success on the merits of these claims.

### 2.    Eighth Amendment Claims Against Melberg and Naphcare

Faust has also not met his burden of demonstrating that he is likely to succeed on the merits of his Eighth Amendment claim against Melberg.  Faust's request for injunctive relief merely reiterates the allegations regarding the assault in the complaint and his affidavit fails to offer additional evidence in support.  See D. 43 at 4–6.  Furthermore, Faust's allegations that Melberg deliberately orchestrated the assault by Do, a mentally ill inmate, are contradicted by Melberg's affidavit, whereby he attests that he was unaware of any risk to Faust's health or safety.  Melberg asserts that he did not have personal knowledge of Do's medical or mental health status and Do's reassignment to Faust's cell was consistent with the Suffolk County Sheriff's Department's (the Department") standing order to avoid three-man cell assignments.  Melberg Aff., D. 53-7 ¶¶ 2–4.  Melberg's reason for reassigning Do is consistent with the reason given by the Institutional Grievance Coordinator for the denial of Faust's grievance.  See Ex. A-1, Compl., D. 1-1 at 5.  Accordingly, Faust has not shown that he is likely to establish that

Melberg acted with the requisite "deliberate indifference" to his health or safety when he assigned Do to his cell.  See Farmer, 511 U.S. at 844 (explaining that "[p]rison officials charged with deliberate indifference might show . . . that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger" to defeat an Eighth Amendment challenge).

Faust also asserts a claim against Naphcare for deliberate indifference to his medical needs and requests that the Court order Naphcare to stop interfering with his medical treatment for the injury to his right hand.  See Compl. ¶ 4; D. 43 at 11.  To succeed on an Eighth Amendment claim based upon the denial of medical care, an inmate must show that the defendant committed "acts or omissions . . . sufficiently harmful to evidence deliberate indifference to serious medical needs."  Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Estelle, 429 U.S. at 106) (internal quotation marks omitted).  "A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated" and "[t]ypically, it is a need that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Kosilek v. Spencer, 889 F. Supp. 2d 190, 199 (D. Mass. 2012).  Faust alleges in the complaint that he suffered "serious physical and emotional injuries" as a result of the assault and that Naphcare has a "policy of restricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive."  Compl. ¶¶ 2, 4.  He further states in his motion for injunctive relief that Naphcare has continuously denied him medical treatment by denying him appointments at Lemuel Shattuck Hospital (the "Hospital") in November 2012 and an MRI of his right hand, however his affidavit is devoid of facts supporting his claim against Naphcare.  See

Faust Aff., D. 43 at 2; <u>Revolutions Med. Corp. v. Med. Inv. Grp. LLC</u>, No. 12-10753-GAO, 2013 WL 1087693, at *7 (D. Mass. Mar. 13, 2013) (noting that "[a]ffidavits are the typical vehicle of proof in preliminary injunction proceedings" and denying a preliminary injunction because the plaintiff did not provide evidentiary support for several of its allegations).

In opposition to Faust's motion, Naphcare has presented an affidavit from Thomas Satkevich ("Satkevich"), the Director of Nursing for Naphcare who is familiar with Faust's care, which details the treatment Faust received after the assault.  Satkevich Aff., D. 52-1 ¶¶ 1–2.  Satkevich asserts that on the day of the assault, medical staff was called to Faust's cell to evaluate him for a "post-incident medical assessment," but Faust "refused to be assessed by a nurse at that time."  <u>Id.</u> ¶ 3.  Several weeks after the assault, Faust put in a sick slip to be seen by medical staff because he believed that he fractured his hand during the altercation with Do and complained of "constant right hand pain."  <u>Id.</u> ¶¶ 4, 6.  On June 6, 2012, Faust's hand was x-rayed and a Physician's Assistant ("PA") determined that he had a hand fracture of the first metacarpal.  <u>Id.</u> ¶ 7.  The PA then discussed the injury with an orthopedic doctor at the Hospital who stated that the injury was old and did not require orthopedic intervention at that time, but that therapy might help.  <u>Id.</u>  Faust was treated with Tylenol and Motrin during periods between June and November of 2012, which Faust refused to take on numerous occasions.  <u>Id.</u> ¶¶ 7–8, 10, 15, 19.  On June 15, 2012, Faust was seen by the PA due to complaints of continued right hand pain and another x-ray was ordered.  <u>Id.</u> ¶ 9.  This second x-ray was "normal" and a radiologist concluded that there was never a fracture of the first metacarpal.  <u>Id.</u> ¶ 10.  On June 27, 2012, Faust was seen for therapy at the Hospital, fitted with wrist support and instructed in a range of motion exercises for his fingers and wrist.  <u>Id.</u> ¶ 12.  On September 6, 2012, Faust refused to

attend a scheduled appointment with the orthopedic doctor at the Hospital because he had a filing deadline in one of his court cases and requested that the appointment be rescheduled.  <u>Id.</u> ¶ 17.  On November 15, 2012, Faust was seen by an orthopedic doctor at the Hospital and an x-ray of Faust's wrist was performed.  <u>Id.</u> ¶ 20.  The x-ray was negative for any fracture or dislocation and the doctor recommended that Faust have an MRI.  <u>Id.</u>  Dr. Kern, Chief Medical Officer for Naphcare, reviewed the request for an MRI and made a decision to first treat Faust conservatively with pain medication.  <u>Id.</u> ¶ 21.  Naphcare continued to treat Faust with pain medication until December 27, 2012 and from December 20, 2012 to April 2013 Faust did not complain to medical staff of hand or wrist pain.  <u>Id.</u> ¶¶ 21, 23.  After reviewing Faust's medical records, Dr. Cheverie, Naphcare's Medical Director, agreed with Dr. Kern that an MRI is not medically necessary.  <u>Id.</u> ¶ 24.

Given Faust's lack of evidentiary support for his claim and Naphcare's affidavit, the Court, on this record, cannot find that Naphcare has demonstrated deliberate indifference to Faust's serious medical needs.  Although Faust alleges, and Naphcare concedes, that an MRI has not been performed, this alone does not support a finding of deliberate indifference because "an inmate is not entitled to ideal care or the care of his choice."  <u>Kosilek</u>, 889 F. Supp. 2d at 199; <u>see also</u> <u>Sires v. Berman</u>, 834 F.2d 9, 13 (1st Cir. 1987) (noting that courts "do not sit as a medical board of review" and "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [the court] will not second guess the doctors").  Faust has been seen on numerous occasions by PAs and orthopedic doctors at the Hospital in response to his complaints of pain, received multiple x-rays, attended therapy and has been prescribed pain medication.  Naphcare

has determined that an MRI is not medically necessary and "[c]ourts must defer to the decisions of prison officials concerning what form of adequate treatment to provide an inmate." Kosilek, 889 F. Supp. 2d at 199. Thus, Faust has not demonstrated a likelihood of success on the merits of his claim against Naphcare.

### 2. *First Amendment Claim Against Melberg*

Faust has also not shown a likelihood of success on the merits of this claim as to Melberg. Filing a grievance is constitutionally protected conduct, Hannon, 645 F.3d at 48, but Faust has failed to establish that filing this grievance was "a substantial factor [or] . . . a motivating factor driving the allegedly retaliatory decision." Ellis v. Viles, No. 09-40001-PBS, 2010 WL 6465282, at *4 (D. Mass. Aug. 26, 2010) (Report and Recommendation) (alteration and omission in original) (quoting Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2010)), adopted by 2011 WL 1344551 (D. Mass. Mar. 3, 2011). In support of his claim, Faust presents an affidavit in which he generally asserts that since filing the grievance against Melberg on March 23, 2012, "I've been harass[ed] by Sgt Melberg and I've been harass[ed] by other officers [and] I've been assaulted." Faust Aff., D. 43 ¶ 6. However, "vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden," Palmer, 155 F. Supp. 2d at 1331, and Faust has failed to offer further evidentiary support for his allegations surrounding the assault. Furthermore, these unsubstantiated allegations about Melberg's retaliatory intent have been controverted by affidavits presented by the Prison Official Defendants. Melberg asserts that he was unaware that Faust had filed a grievance against him prior to Do's cell reassignment. Melberg Aff., D. 53-7, ¶ 5. Joseph Crosby ("Crosby"), the Inmate Grievance Coordinator, also asserts that he resolved Faust's March 23, 2012 grievance without informing Melberg. Crosby

Aff., D. 53-8 ¶ 6.  Finally, Melberg asserts that he changed Do's housing assignment to comply

with the Department's standing order to avoid three-man cells, Melberg Aff., D. 53-7 ¶ 3, and

thereby puts forth a legitimate reason for placing Do in Faust's cell.  Schofield, 769 F. Supp. 2d

at 47 (noting that "even if the officials had an impermissible reason for the action taken, they

may not be held liable if they also had an independent, permissible reason for doing so").

### D.    Other Factors for Injunctive Relief

Given the Court's conclusion that Faust has not established a likelihood of success on the

merits, it need not discuss the remaining factors for injunctive relief, namely the likelihood of

irreparable harm, the balance of equities, or whether the requested injunctive relief would

comport with the public interest.  New Comm Wireless Servs., Inc., 287 F.3d at 9.  In the interest

of completeness, however, the Court will address the additional factors, none of which tip in

Faust's favor.

"A showing of irreparable harm requires 'an actual, viable, presently existing threat of

serious harm' that cannot adequately be remedied through money damages alone."  Corporate

Techs., Inc. v. Harnett, No. 12-12385-DPW, 2013 WL 1891308, at *7 (D. Mass. May 3, 2013);

see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996) (noting

that "a preliminary injunction is not warranted by a tenuous or overly speculative forecast of

anticipated harm").  At oral argument, the parties informed the Court that Faust has been

transferred from the HOC to a correctional facility in Essex County.  Therefore, Faust is unable

to show a "presently existing threat of serious harm," and thus irreparable harm in the absence of

a preliminary injunction, because he is no longer under the supervision of the parties he has

asserted claims against.  See Palermo v. Van Wickler, No. 12-CV-86-SM, 2012 WL 4513991, at

*1 (D.N.H. Sept. 7, 2012) (Report and Recommendation) (noting that a "claim for injunctive relief concerning conditions at a prison facility are rendered moot by an inmate's transfer from that facility"), adopted sub nom. by Palermo v. Superintendent, Cheshire Cnty. Dep't of Corr., 2012 WL 4589508 (D.N.H. Oct. 1, 2012).  Relatedly, Faust is unable to show that the balance of equities tips in his favor because, in light of his relocation, he is unlikely to suffer any hardship if no injunction issues.  See Hannon v. Allen, 241 F. Supp. 2d 71, 73 (D. Mass. 2003) (noting that the court must "balance the hardship to the plaintiff if no injunction is issued against the hardship to the defendants if the requested injunction is ordered").  Finally, the public interest is not served by granting Faust injunctive relief.  Deference should be afforded to the judgment of prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); see also Cryer, 2012 WL 892883, at *12. Here, Melberg, based on his judgment and the HOC's policies regarding inmate housing, placed Do in Faust's cell so as to avoid three-man cell assignments.  Naphcare, based on input from health professionals, afforded Faust the treatment for his hand that it deemed to be medically necessary.  Therefore, the Court cannot find on this record that an injunction is in the public interest.

In light of the foregoing, the Court DENIES Faust's motion for a preliminary injunction.

## VII.    Conclusion

For the foregoing reasons, the Court DENIES Naphcare's motion to dismiss (D. 22).  The Court GRANTS the Prison Official Defendant's motion to dismiss as to the official capacity and negligence claims against the Prison Official Defendants and DENIES without prejudice the

Prison Official Defendant's motion to dismiss as to the First and Eighth Amendment claims against Cabral and Horgan (D. 25) and Faust has two weeks from the date of this order to amend his complaint as to these claims.  The Court DENIES Naphcare's motion to strike (D. 30).  The Court DENIES Faust's motion for injunctive relief (D. 43).

**So ordered.**

/s/ Denise J. Casper
United States District Judge